IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Criminal Action No. 5:10-cr-00028 |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| | ) | United States District Judge |
| RAUL TRONCO-RAMIREZ | ) | |
| | ) | |

**MEMORANDUM OPINION**

Raul Tronco-Ramirez ("Tronco-Ramirez") pled guilty to four felony counts on December 16, 2010, without the benefit of a plea agreement. He now moves to withdraw his guilty plea. Tronco-Ramirez, who does not speak or understand English, claims that he did not understand the charges to which he pled guilty. An evidentiary hearing was held on July 26, 2011, at which Special Agent Travis Moran, Tronco-Ramirez, and Tronco-Ramirez's former counsel, Kerry Armentrout ("Armentrout"), testified. Having considered the evidence and arguments of counsel, the court concludes that Tronco-Ramirez did not enter a knowing and voluntary plea of guilty. Accordingly, his motion to withdraw his guilty plea (Dkt. # 118) is **GRANTED**.

**I.**

The government charged five individuals, including Tronco-Ramirez, in a six count indictment on October 7, 2010. Tronco-Ramirez is named in Counts One, Four, Five, and Six of the indictment. Counts One and Four charge Tronco-Ramirez with conspiracy to distribute and possession with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine. (Dkt. # 3, at 1-2.) Tronco-Ramirez faces a mandatory minimum sentence of

ten years total for these counts.[1]  Counts Five and Six charge Tronco-Ramirez with possession of a firearm in furtherance of a drug trafficking crime.  Id. at 2-3.  Count Five carries a minimum mandatory sentence of five years and Count Six carries a mandatory minimum sentence of twenty-five years.  In total, Tronco-Ramirez faces a mandatory minimum sentence of 40 years.

Tronco-Ramirez entered a not guilty plea to all four counts at a Rule 10 arraignment on October 12, 2011.  (Dkt. # 39.)  Thereafter, the government offered Tronco-Ramirez a plea agreement that provided for a 35 year sentence.  (Dkt. # 118, at 1.)  Tronco-Ramirez rejected this plea agreement.  Instead, he appeared before a magistrate judge on December 14, 2010[2] and indicated his desire to plead guilty to all four counts of the indictment without the benefit of a plea agreement.  When asked at the December 14, 2010 guilty plea hearing whether he had reviewed the indictment with his attorney, Tronco-Ramirez stated through an interpreter, "what I don't understand is that I'm being charged with lots of things and they're lies."  (Dkt. # 170, at 13.)  Immediately thereafter, the prosecutor announced, "Your Honor, I think we're done," to which the magistrate judge replied, "I think we can stop as to this defendant right now."  Id.

Just two days later, however, on December 16, 2010, Tronco-Ramirez was back in court, again pleading guilty without a plea agreement to all four counts.  During this hearing, the interpreter was not physically present but instead translated over the telephone.  The transcript of the December 16, 2010 guilty plea hearing reflects numerous communication difficulties. (Docket # 142.)  Time and again, the record reflects problems relating to the ability of the court, the interpreter and the defendant to hear and understand one another.  It reflects multiple "off the record" discussions, inaudible words, and difficulties communicating and understanding.

---

[1] Sentences for violations of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) may run concurrently.

[2] The December 14, 2010 guilty plea hearing involved three defendants:  Luis Alberto Castro Mayorquin, Pedro Castenera-Arallano, and Raul Tronco-Ramirez.

2

Nevertheless, Tronco-Ramirez entered pleas of guilty to all four counts. On December 29, 2010, the magistrate judge issued a report and recommendation recommending acceptance of Tronco-Ramirez's guilty plea, which was adopted by the district judge on January 24, 2011. Sentencing was set for March 9, 2011.

Tronco-Ramirez wrote a letter to the court dated January 25, 2011, the day after his guilty plea was accepted, that said he believed he mistakenly pled guilty to the charges because of his inability to speak and understand English. (Dkt. # 115.) This letter was notarized on February 8 and filed with the court on February 23, 2011. Tronco-Ramirez echoed these concerns in a motion to withdraw his guilty plea filed March 8, 2011. (Dkt. # 118.) He appeared before the court for his scheduled sentencing on March 9, 2011 and argued his motion to withdraw. The district judge took the motion under advisement and called for a lengthier evidentiary hearing. This case was subsequently transferred to the undersigned district judge, and on July 26, 2011, an evidentiary hearing was held. At this hearing, Tronco-Ramirez again argued that his inability to understand English rendered his guilty plea not knowing and voluntary.

## II.

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure states "[a] defendant may withdraw a plea of guilty or nolo contendere after the court accepts the plea, but before it imposes sentence if the defendant can show a fair and just reason for requesting the withdrawal." In <u>United States v. Moore</u>, the Fourth Circuit articulated six factors to guide reviewing courts when considering whether the defendant's reason for withdrawing his guilty plea is "fair and just":

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the

3

> motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

931 F.2d 245, 248 (4th Cir. 1991). The Fourth Circuit has stated that this test not "rigidly mechanistic." United States v. Sparks, 67 F.3d 1145, 1154 (4th Cir. 1995). Instead, Moore "articulated six considerations that should inform a district court's inescapably impressionistic judgment as to whether a defendant's reasons for moving to withdraw [his] guilty plea are sufficient to satisfy the language and purpose of" Rule 11. Id.

Of the Moore factors, "the first, second, and fourth factors are the most significant, as they 'speak most straightforwardly to the question of whether the movant has a fair and just reason to upset settled systemic expectations by withdrawing his guilty plea.'" United States v. Cheese, 411 F. App'x. 609, 610-11 (4th Cir. 2011) (quoting Sparks, 67 F.3d at 1154). The third, fifth, and sixth factors "are better understood as countervailing considerations that establish how heavily the [Rule 11] presumption should weigh in any given case." Sparks, 67 F.3d. at 1154. The court addresses each of these factors in turn.

### III.

While all six Moore factors must be given appropriate weight, the Fourth Circuit has stated the court's "most important consideration is the first – whether the plea was knowing and voluntary." United States v. Cline, 286 F. App'x 817, 819 (4th Cir. 2008); see also United States v. Bowman, 348 F.3d 408, 414 (4th Cir. 2003) ("The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted."). In analyzing the first factor, the court must "closely scrutinize[] the plea colloquy and attach[] a strong presumption that the plea is final and binding if the Rule 11

4

proceeding was adequate." Id. (citing United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992)); see also United States v. Puckett, 61 F.3d 1092, 1099 (4th Cir. 1995).

At his Rule 10 arraignment on October 12, 2010, Tronco-Ramirez pled not guilty to all charges against him, for which he faced a total mandatory minimum sentence of 40 years. Sometime thereafter, he rejected a plea agreement providing for a sentence of 35 years in jail. On December 14, 2010, Tronco-Ramirez attempted to enter a plea of guilty to all four counts without the benefit of a plea agreement. The court stopped the guilty plea hearing during the following exchange:

>THE COURT: Mr. Tronco, has the indictment been fully translated and read to you?
>
>THE DEFENDANT: In Spanish?
>
>THE COURT: Yes.
>
>THE DEFENDANT: No.
>
>THE COURT: It has not been translated and read to you?
>
>THE DEFENDANT: The gentleman has explained it to me.
>
>THE COURT: Have you had enough time to go over it with your attorney?
>
>THE DEFENDANT: Yes, he has explained to me those things, the problems.
>
>THE COURT: Have you had enough time to discuss it with your attorney?
>
>THE DEFENDANT: Yes, that's why I decided to sign because he already explained it to me.
>
>THE COURT: Have you had enough time – have you talked to your attorney about any defenses you might have and have you had enough time to prepare any such defenses?

5

| | |
|---|---|
| THE DEFENDANT: | Well, I really haven't, haven't really, really understood. |
| THE COURT: | What is it that you don't understand? |
| THE DEFENDANT: | Well, what I don't understand is that I'm being charged with lots of things and they're lies. |
| MR. TERRIEN:[3] | Your Honor, I think we're done. |
| THE DEFENDANT: | And I don't think he can speak – |
| THE COURT: | I think we can stop as to this defendant right now. |
| MR. TERRIEN: | Yes, sir. I think we can excuse him and set a trial date. |
| THE COURT: | That's all we can do. That's all we can do. He's contesting the charges and he's entitled to contest the charges. |

(Dkt. # 170, at 12-13.) It is clear from this exchange that the defendant wished not to plead guilty to the charges because he believed the charges to be lies.

The record does not reflect why this defendant returned to the courtroom for a second guilty plea hearing just two days later, nor does anyone at the hearing make mention of the statements uttered by Tronco-Ramirez a few days earlier that the charges against him are "lies." At the December 16, 2010 hearing, the defendant pled guilty to all four charges against him by means of the following exchange:

| | |
|---|---|
| THE COURT: | Sir, as to the charge that you participated in a criminal conspiracy to distribute at least a half a kilo of methamphetamine, what plea do you enter to count one of the indictment? Do you plead guilty or not guilty? |

---

[3] Jeb Terrien, an Assistant United States Attorney (AUSA) for the Western District of Virginia, represented the government at the December 14, 2010 guilty plea hearing. A different AUSA represented the government at the December 16, 2010 guilty plea hearing, March 9, 2011 motion to withdraw hearing, and July 26, 2011 evidentiary hearing.

6

| | | |
|---|---|---|
| THE WITNESS: | | Guilty. |
| THE COURT: | | A plea of guilty is tendered to count one. |

                    As to the charge that on or about 30 June, that you, acting as principal or aider and abettor, possessed at least 50 grams of methamphetamine with intent to distribute, what plea do you enter to count four of the indictment, sir? Are you, in fact, guilty or not guilty?

      THE WITNESS:      Guilty.

      THE COURT:      A plea of guilty is tendered to count four.

                    As to the charge that on or about 10 June, you possessed a certain RG .22-caliber revolver in furtherance of a drug-trafficking crime, what plea do you enter to count five, sir? Are you guilty or not guilty?

      THE WITNESS:      Guilty.

      THE COURT:      A plea of guilty is entered to count five of the indictment.

                    As to the charge, sir, that on or about June 11, or between then and June 30th, you possessed a .38-caliber RG in furtherance of a drug crime, what say you to count six? Are you, in fact, guilty or not guilty?

      THE WITNESS:      Guilty.

      THE COURT:      A plea of guilty is tendered to count six.

(Dkt. # 142, at 25-26.) While it is apparent from this exchange that Tronco-Ramirez pled guilty to all four counts, the court is concerned by the numerous interpreting problems, inaudible words, and off the record discussions reflected in the hearing transcript. The interpreter was not present in the courtroom, translating instead via telephone. Problems relating to Tronco-Ramirez and the interpreter's ability to hear one another began almost immediately and continued throughout the hearing. The defendant or the interpreter expressed his inability to hear the other on almost a dozen occasions. One example of the hearing difficulty is as follows:

7

| | | |
|---|---|---|
| THE INTERPRETER: | | Your Honor, could you instruct him to reply in a loud voice (inaudible)? |
| THE COURT: | | I'm sorry, I didn't understand what he just – |
| MR. ARMENTROUT: | | The interpreter is asking him to speak more loudly. |
| THE COURT: | | Oh, okay. |
| | | Mr. Tronco-Ramirez, would you speak up a little louder, because the interpreter is having a little trouble understanding you. |
| THE INTERPRETER: | | (Inaudible.) |
| THE COURT: | | To the interpreter, I – your – what I just heard broke up completely and I was unable to understand it at all. |
| THE INTERPRETER: | | The defendant, if he can – (inaudible.) |

(Dkt. # 142, at 12-13.) This exchange indicates that the judge, interpreter, court reporter and defendant all had difficulty understanding one another. Nearly one-third of the pages (4, 5, 6, 7, 11, 12, 13, 18, 26, 27, 30, and 31) of the 34 page transcript from the December 16, 2010 hearing reflect some type of hearing or comprehension difficulty.

Another example of Tronco-Ramirez's inability to hear occurs when the Clerk is reading the written plea, almost immediately after the defendant pled guilty to all four charges:

| | | |
|---|---|---|
| MR. ARMENTROUT: | | It's not working. I can barely hear the interpreter for some reason. |
| THE CLERK: | | Mr. Interpreter, would you like for me to start over? |
| | | (Off the record) |
| THE COURT: | | Did – was Mr. Tronco-Ramirez able to understand through the point that he entered the pleas of guilty to the four offenses? Was there any problem up to that point? |
| THE WITNESS: | | No, sir. |

8

| | | |
|---|---|---|
| THE COURT: | | All right.  Madam Clerk, what I'll ask you to do is if you would go slowly through it and we'll start all over again on the – reading the written plea. |
| THE CLERK: | | In the presence of Kerry Armentrout, your attorney, who has fully explained the charges contained in the indictment against you – |
| MR. ARMENTROUT: | | It's not speed; it's volume. |
| MR. HOFFMAN: | | Can we ask the interpreter to speak louder or turn it up on his end? |
| THE COURT: | | Let's see – let's try it again.  Let him – okay.  Let's go ahead. |
| | | (Off the Record.) |

(Dkt. # 142, at 26-27.)  Given the abundance of communication problems such as this, the court is concerned that essential words were left out, misheard, or were inaudible when translated to Tronco-Ramirez.

In the above exchange, the magistrate judge attempted to clear up confusion and ensure that the defendant understood the charges to which he pled guilty.  He asked the defendant, "Did – was Mr. Tronco-Ramirez able to understand through the point that he entered the pleas of guilty to the four offenses?  Was there any problem up to that point?"  (Dkt. # 142, at 27.)  The defendant answered, "No, sir."  Id.  Because the questions conflict, however, it is unclear whether Tronco-Ramirez answered "no" to the first question ("was Mr. Tronco-Ramirez able to understand…?") or to the second question ("was there any problem [understanding]…?").  If he answered "no" to the first question, then clearly he did not enter a knowing and voluntary plea of guilty.  This question and answer sequence muddies an already cloudy atmosphere.

On this record, it cannot be said that the Rule 11 proceeding was adequate.  Tronco-Ramirez wrote a letter to the court dated January 25, 2011 that reads:

9

> I do not speak English and by means of other people who speak some Spanish, I am beginning to understand my case. I believe that I may have enter [sic] or signed an agreement with the court, but I have not seen, read or received anything in Spanish nor it has been explain [sic] to me in Spanish. This Plea Agreement happened during my **second** visit with who I believe is a Master [sic] Judge, and my case never made it to regular court. You're [sic] Honor, and I have not seen or review [sic] any evidence, nor understand my rights. I also have not been able to communicate with my appointed lawyer since he does not speak Spanish. Please help me with my case and I ask the court that my rights, documents and a proper defense be provided to me in Spanish.

(Dkt. # 115 (emphasis in original).) This letter states that Tronco-Ramirez's inability to understand English hindered his understanding of the charges to which he pled guilty. After rejecting a plea agreement that contemplated a lesser sentence of 35 years, Tronco-Ramirez pled guilty without a plea agreement to all four charges, which carried a mandatory minimum of 40 years of incarceration. (Dkt. # 118, at 1.) The rejection of a plea agreement carrying a lesser sentence in favor of a "straight up" plea with a longer mandatory minimum sentence indicates confusion and a lack of understanding as to what Tronco-Ramirez was doing when he pled guilty.

Furthermore, at the March 9, 2011 hearing on the motion to withdraw his plea, Tronco-Ramirez consistently referenced facing a 35 year sentence. (Dkt. # 161.) But 35 years was what he faced if he had accepted the plea agreement originally offered him by the United States, as opposed to the 40 year mandatory minimum sentence his December 16, 2010 guilty plea required. This again indicates confusion. For these reasons, the court finds that Tronco-Ramirez has offered credible evidence that his guilty plea was not knowing. The first <u>Moore</u> factor, therefore, militates in favor of withdrawal.

The second factor in <u>Moore</u> is "whether the defendant has credibly asserted his legal innocence." 931 F.2d at 248. While Tronco-Ramirez need not "provide conclusive proof of

10

innocence" in order to succeed on this factor, United States v. Cline, 286 F. App'x 817, 821 (4th Cir. 2008), he must "do more than demonstrate that []he had a bona fide belief that [his] actions were lawful." United States v. Sparks, 67 F.3d 1145, 1153 (4th Cir. 1995). Indeed, his assertion of legal innocence must be credible. Id.

During his first Rule 11 guilty plea hearing on December 14, 2010, Tronco-Ramirez stated the charges were "lies." At the March 9, 2011 hearing on the motion to withdraw his plea, Tronco-Ramirez asserted he was not guilty of everything that had been attributed to him – namely, the second § 924(c) charge. He testified, "[w]ith regard to those weapons, I have already explained that one was mine, but the other one belonged to the other guy, and I am being charged with both weapons." (Dkt. # 161, at 6.) Notwithstanding the fact that two firearms were seized from his residence pursuant to a search warrant, he insisted the second gun did not belong to him.

Although he claims not to be responsible for the second § 924(c) charge, Tronco-Ramirez has not demonstrated that his assertions of legal innocence are credible. Tronco-Ramirez signed a statement of facts on December 16, 2010, which summarizes the circumstances surrounding his criminal conduct. In that statement, Tronco-Ramirez admitted that he distributed more than 500 grams of a substance containing a detectable amount of methamphetamine and that on two occasions in 2010, he traded methamphetamine for a firearm. Tronco-Ramirez claims these facts were never transcribed into Spanish for him and he did not understand what he was signing. Testimony from his trial counsel and Special Agent Travis Moran at the July 2011 evidentiary hearing cut against this argument, however.

Armentrout testified that before Tronco-Ramirez signed the statement of facts, it was read to him verbatim by a Spanish interpreter. Indeed, the transcript from the December 16,

11

2010 guilty plea hearing indicates that the written statement of facts had been translated and fully read to Tronco-Ramirez prior to the start of the hearing. (Dkt. # 142, at 23.) Armentrout told the court that Tronco-Ramirez would "say he agrees with those facts" and accepts them as the government's evidence. (Dkt. # 142, at 4.) Given the considerable communication difficulties on December 16, 2010, however, the court has some concern that key portions of the factual statement might have been lost in translation. But according to Armentrout, the statement of facts also was read to Tronco-Ramirez by a Spanish interpreter on December 14, 2010, although it is not reflected in the December 14th guilty plea transcript. There is no evidence to suggest there were any communication or translation difficulties at the December 14th hearing.

Additionally, Special Agent Travis Moran testified at the July 2011 evidentiary hearing that after reading defendant his Miranda rights, Tronco-Ramirez made statements with the assistance of a translator indicating both guns were his. Special Agent Moran testified that Tronco-Ramirez admitted he traded one gram of methamphetamine for a .22 caliber revolver on one occasion, and that he traded three grams of methamphetamine for a .38 caliber revolver on a second occasion. Given this evidence, Tronco-Ramirez's bald claims of innocence fall short of the credible assertions of legal innocence necessary to satisfy the second Moore factor. As such, this second factor weighs in favor of the government.

The third factor is "whether there has been a delay between the entering of the plea and the filing of the motion." Moore, 931 F.2d at 248. In Moore, the defendant delayed six weeks before giving notice of his intent to move to withdraw his pleas. The Fourth Circuit referred to this delay as "long" and considered the length of the delay to weigh in the United State's favor. Id. at 248. The government in the instant case argues that Tronco-Ramirez's delay in filing his motion to withdraw is also long, as he waited nearly three months (82 days). Indeed, Tronco-

12

Ramirez did not file a formal motion to withdraw his guilty plea until March 8, 2011, the eve of sentencing. But he expressed concerns with his guilty plea in a letter to the court dated January 25, 2011. One could argue that this letter is timely, as it was dated the day after the district court adopted the magistrate judge's report and recommendation and accepted Tronco-Ramirez's guilty plea. However, the fact that the letter was not notarized until February 8, 2011 and filed with the court until February 23, 2011 cuts against that argument. Tronco-Ramirez waited nearly six weeks after his guilty plea hearing to write that letter and bring this issue to the court's attention. On the whole, this third factor lends weight to the government's position in this case.

Moore's fourth factor is "whether defendant has had close assistance of competent counsel." 931 F.2d at 248. "A defendant can demonstrate the absence of close assistance of counsel for purposes of the Moore test only by showing that [his] 'counsel's performance fell below an objective standard of reasonableness,'" United States v. Sparks, 67 F.3d 1145, 1153 (4th Cir. 1995) (quoting United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992)), and that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." United States v. Ubakanma, 215 F.3d 421, 425 (4th Cir. 2000).

Tronco-Ramirez stated in his January 24, 2011 letter to the court, "I have not been able to communicate with my appointed lawyer since he does not speak Spanish." (Dkt. # 115.) At the July 26, 2011 evidentiary hearing, Tronco-Ramirez also testified that Armentrout told him that he would get a better deal if he pleaded guilty. Armentrout denied such a conversation ever took place. Armentrout further testified that a translator was present at all of his meetings with Tronco-Ramirez and that he explained the mandatory minimum sentences to his client during every meeting. On this record, Tronco-Ramirez has not established that counsel's performance fell below an objective standard of reasonableness. This factor, therefore, also weighs in favor of

13

the government.

The fifth factor, "whether withdrawal will cause prejudice to the government" and the sixth factor, "whether it will inconvenience the court and waste judicial resources," call for qualitative judgments from the reviewing court. In Sparks, the Fourth Circuit said:

> We note that, despite the precise language of the Moore test, factors five and six—like, at least, factor three—generally call for qualitative judgments, not binary ones. Because withdrawal of a guilty plea almost invariably prejudices the government to some extent and wastes judicial resources, the fifth and sixth factors can weigh in the defendant's favor so long as [he] shows that the magnitudes of the prejudice and inconvenience are small; the defendant need not show that the effects will be nonexistent.

67 F.3d at 1154 n.5.

At the July 26, 2011 evidentiary hearing, the government argued that withdrawal would prejudice the government because the other defendants named in the five person indictment all cooperated and had been sentenced. Thus, these defendants now lack an incentive to cooperate and testify against Tronco-Ramirez. The government also claimed that bringing them back to court would strain the government's resources.

The court notes that granting Tronco-Ramirez's motion to withdraw his guilty plea would cause the government some degree of prejudice. As the government points out, bringing the four individuals back to testify certainly is a strain on government resources. Because all of the witnesses, however, are alive, in custody, and able to testify, the government would not face significant prejudice if the court granted the motion to withdraw. Thus, the fifth factor weighs in favor of the defendant.

"Whether it will inconvenience the court and waste judicial resources" serves as the sixth factor in Moore. 931 F.3d at 248. Similar to how granting the motion would prejudice the government to some degree, granting it would also inconvenience the court and cause it to

14

expend additional judicial resources. If the court grants the motion to withdraw Tronco-Ramirez's plea, the court will likely spend several days presiding over a trial. The extent to which the court will be inconvenienced, however, is relatively minor, especially considering the court's job is to ensure justice is done. Presiding over a trial would certainly not constitute an undue burden on the court. The sixth factor, therefore, weighs in favor of Tronco-Ramirez.

### IV.

In sum, factors one, five and six militate in favor of withdrawal, while factors two, three, and four weigh in the government's favor. The Fourth Circuit has made clear that the first factor – whether defendant's plea is knowing and voluntary – is the most important. In this case, defendant has provided credible evidence that his plea was not knowing. It simply makes no sense for Tronco-Ramirez to have rejected a plea agreement providing for a sentence of 35 years and then plead straight up to charges carrying a mandatory minimum of 40 years. Two days after he referred to the charges against him as "lies," Tronco-Ramirez appeared in court and entered a guilty plea without the benefit of a plea agreement. The transcript from this December 16, 2010 guilty plea hearing is rife with translation inadequacies that simply cannot be ignored. Given this record, the court is constrained to find that Tronco-Ramirez should be allowed to withdraw his guilty plea. Tronco-Ramirez has satisfied his burden under Rule 11 by showing a fair and just reason for requesting the withdrawal.

For these reasons, Tronco-Ramirez's motion to withdraw his guilty plea (Docket # 118) is **GRANTED**. This matter will be set down for further proceedings.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to counsel of record.

Entered: August 29, 2011

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge