CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

NOV 0 6 2024

LAURA A. AUSTIN, CLERK
BY: __M·POPE__
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 5:10-cr-028 |
| v. | ) |
| | ) By: Michael F. Urbanski |
| RAUL TRONCO-RAMIREZ, | ) Senior United States District Judge |
| Defendant-Petitioner | ) |

## MEMORANDUM OPINION

This matter comes before the court on defendant Raul Tronco-Ramirez's motion for

compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A). On May 9, 2024, this court

denied Tronco-Ramirez's pro se motion for a sentence reduction under Amendment 821 to

the United States Sentencing Guidelines. ECF Nos. 298, 309. At the same time, the court

appointed the Federal Public Defender (FPD) to represent Tronco-Ramirez and ordered the

parties to brief the issue of whether Tronco-Ramirez is entitled to compassionate release based

on the change to sentencing in 18 U.S.C. § 924(c) brought about by the First Step Act of 2018.

ECF No. 308. Tronco-Ramirez filed a motion for compassionate release on May 31, 2024,

and the government responded in opposition on June 28, 2024. ECF Nos. 311, 316. The court

ordered the parties to provide evidence about Tronco-Ramirez's post-conviction behavior and

institutional history, ECF No. 318, and they have done so. ECF Nos. 319, 320. As set forth

below, the court will **GRANT** Tronco-Ramirez's motion and **REDUCE** his sentence from

285 months to 180 months, but not less than time served. Tronco-Ramirez's term of

incarceration will be followed by a 5-year term of supervised release.[1]

---

[1] On June 8, 2022, Tronco-Ramirez was transferred to a penal institution on Mexico to serve the remainder of
his sentence, pursuant to the International Prisoner Transfer Program. See ECF No. 298 at 2.

## I. Background

On October 20, 2011, Tronco-Ramirez was charged in a superseding indictment with conspiring to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, and 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), all in violation of 21 U.S.C. § 846 (Count One); possessing with intent to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count Two); on or about June 10, 2010, possessing a firearm, an R&G .22 caliber revolver, in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three); and on or about June 11, 2010, possessing a firearm, an R&G .38 caliber revolver, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Four). Superseding Indictment, ECF No. 187. On Counts One and Two, Tronco-Ramirez faced a statutory sentencing range of 10 years to life. On Count Three, the statutory term was 5 years to life, with the sentence required to run consecutively to any other sentence imposed. Id. ¶ 50; 18 U.S.C. § 924(c)(1)(A) (2006). At that time, Count Four time carried a mandatory consecutive 25-year sentence. Plea Agreement, ECF No. 192; 18 U.S.C. § 924(c)(1)(C)(i).

According to the Pre-Sentence Investigation Report (PSR), Tronco-Ramirez was responsible for distributing at least 1.5 but less than 5 kilograms of methamphetamine. PSR, ECF No. 223, ¶ 26. Under the United States Sentencing Guidelines (USSG or guidelines) in effect at the time, the drug weight gave him a base offense level of 34, decreased by 3 levels for acceptance of responsibility, for a total offense level of 31. Id. ¶¶ 26–35; USSG § 2D1.1(c)(3). Tronco-Ramirez had 1 criminal history point, which established a criminal history

2

category of I. Id. ¶ 38; USSG Ch. 5 Pt. A. The combination of a total offense level of 31 and criminal history category I resulted in a guidelines sentencing range of 108 to 135 months. PSR, ECF No. 223 ¶ 51; USSG Ch. 5 Pt. A. However, because the statutory minimum sentence was 10 years each on Counts One and Two, his guidelines range was 120 to 135 months. PSR, ECF No. 223 ¶ 51; USSG 5G1.1(b). The guidelines range on Count Three was 60 months and on Count Four, 300 months, imposed consecutively. USSG § 5G1.2(a).

On October 26, 2011, Tronco-Ramirez entered into a Rule 11(c)(1)(C) plea agreement in which he pled guilty to Counts One, Two, and Three of the Indictment. The parties agreed that Tronco-Ramirez would be sentenced to concurrent 240-month sentences on Counts One and Two, and a consecutive term of 60 months on Count Three, for a total term of 300 months. The government agreed to dismiss Count Four. Plea Agreement, ECF No. 192.

On December 19, 2011, Tronco-Ramirez was sentenced to a term of 300 months, consisting of concurrent 240-month sentences on Counts One and Two, and a consecutive 60-month sentence on Count Three, to be followed by a 5-year term of supervised release. J., ECF No. 220. On November 21, 2018, Tronco-Ramirez's sentence was reduced to 285 months after he filed a motion for a sentence reduction pursuant to Amendment 782 of the guidelines. Am. J., ECF No. 296.

In Tronco-Ramirez's motion for compassionate release, he argues that if sentenced today, he would not face a 25-year mandatory, consecutive sentence on Count Four of the indictment, but would face only a 5-year minimum on that count, and that the disparity between the maximum sentence he faced in 2011 and the sentence he would face today for the same conduct creates an "extraordinary and compelling" reason for a sentence reduction.

3

Mot., ECF No. 311. The government counters that Tronco-Ramirez has not established an extraordinary and compelling reason for a sentence reduction. Resp., ECF No. 316.

## II. Analysis

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 (FSA), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

(emphasis added).

Accordingly, Tronco-Ramirez's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors. The government does not contest that Tronco-Ramirez exhausted his administrative remedies.

Regarding whether Stewart has established an extraordinary and compelling need for a sentence reduction, prior to enactment of the First Step Act of 2018, only the Bureau of

Prisons could file a motion for compassionate release on behalf of an inmate. United States v. High, 997 F.3d 181, 185 (4th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A) (2002)). The First Step Act, among other changes, amended § 3582(c)(1)(A) to allow inmates to file motions with a district court on their own behalf after exhausting their administrative remedies.

The statute also requires that any reduction based on an extraordinary and compelling reason be consistent with applicable policy statements issued by the United States Sentencing Commission (the Commission). But, prior to March 2023, there were no "applicable policy statements" to reference, because the Commission lacked a quorum and could not act. See discussion, United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020).[1] In the absence of applicable policy statements, courts looked to relevant sentencing guidelines provisions to determine whether a motion presented an extraordinary and compelling reason warranting a sentence reduction. United States v. Davis, 99 F.4th 647, 654 (4th Cir. 2024). Courts in the Fourth Circuit (and other circuits) held that a change in law that resulted in a gross disparity between the sentence a defendant received and the sentence that he likely would receive were he convicted today could be an extraordinary and compelling reason warranting a sentence reduction. See McCoy, 981 F.3d at 286, and the cases that followed it.

In May 2023, the Commission achieved a quorum and adopted revised guidelines that became effective November 1, 2023. Included in the revisions were policy statements addressing motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. See U.S. SENT'G

---

[1] See also U.S. Sentencing Comm'n Annual Report 2–3 (2019)
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf.

COMM'N, GUIDELINES MANUAL §1B1.13 (NOV. 2023). As is relevant to Tronco-Ramirez's motion, the revisions include a policy statement that addresses when an "unusually long sentence" can be a reason for a court to grant a sentence reduction under § 3582(c)(1)(A). The policy statement provides that a defendant is eligible for a sentence reduction if he can show the following:

> (6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

> (c) Limitation on Changes in Law.--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG §§1B1.13(b)(6) and (c).

Tronco-Ramirez agreed to a sentence of 300 months as part of the Rule 11(c)(1)(C) plea agreement, negotiated at a time when he faced a statutory minimum sentence of 480 months under the indictment. In his supplemental motion, he cites to the revised policy statement, and argues that if he were sentenced today, the minimum statutory sentence would be 240 months rather than 480 months, and that the difference in the sentence he currently is

serving and that which he would likely have to serve today is a gross disparity that warrants compassionate release. Tronco-Ramirez has served more than 10 years of his term of imprisonment and thus meets the first criterion for a reduction.

In its supplemental response, the government makes three arguments in support of its contention that Tronco-Ramirez is not entitled to a sentence reduction: (1) The Commission exceeded its congressionally delegated authority in promulgating USSG § 1B1.13(b)(6); (2) The change in the statutory mandatory minimum sentence applicable to Tronco-Ramirez is not an extraordinary and compelling reason for a sentence reduction; and (3) The § 3553(a) factors weigh against a sentence reduction. Each will be addressed in turn.

### A. Sentencing Commission's Authority to Promulgate USSG § 1B1.13(b)(6) and (c).

The government argues that the Commission exceeded its authority when it promulgated USSG §§ 1B1.13(b)(6) and (c). Resp., ECF No. 316. In light of the argument, a short review of the purpose and functions of the Commission is in order.

The Commission was established in 1984 as an independent commission in the judicial branch of the United States, with the purpose of establishing sentencing policies and practices of the federal criminal justice system that (1) assure the meeting of the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2); (2) provide certainty and fairness in meeting the purposes of sentencing and avoiding unwarranted sentencing disparities while maintaining sufficient flexibility to permit individualized sentences; (3) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process; and (4) develop means of assessing the degree to which sentencing, penal, and correctional practices are

effective in meeting the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2).[2] 28 U.S.C. § 991.

Among other duties, the Commission, by a vote of four of its seven members, pursuant to its rules and regulations and consistent with all relevant federal statutes, shall promulgate guidelines for use by a sentencing court in determining a sentence to be imposed. 28 U.S.C. § 994(a)(1). The Commission also is tasked with promulgating general policy statements regarding application of the guidelines, or other aspects of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in 18 U.S.C. § 3553(a)(2), including the appropriate use of the sentence modification provisions set forth in 18 U.S.C. § 3582(c). 28 U.S.C. § 994(a)(2)(C).

The Commission further is directed to review and revise the guidelines and submit proposed guidelines amendments to Congress for review:

> The Commission, at or after the beginning of a regular session of Congress, but not later than the first day of May, may promulgate under subsection (a) of this section and submit to Congress amendments to the guidelines and modifications to previously submitted amendments that have not taken effect, including modifications to the effective dates of such amendments. Such an amendment or modification shall be accompanied by a statement of the reasons therefor and shall take effect on a date specified by the Commission, which shall be no earlier than 180 days after being so submitted and no later than the first day of November of the calendar year in which the amendment or modification is submitted, except to the extent that the effective

---

[2] Section 3553(a) sets out the factors a court considers in imposing a sentence, including (2) the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

8

> date is revised or the amendment is otherwise modified or
> disapproved by Act of Congress.

28 U.S.C. § 994(p). Notably, policy statements like the one at issue here are not subject to the

180-day waiting period applicable when the Commission passes a guidelines amendment.

United States v. Colon, 707 F.3d 1255, 1260–61 (11th Cir. 2013); United States v. Horn, 679

F.3d 397, 406 (6th Cir. 2012). However, "to the extent practicable, the Commission shall

endeavor to include amendments to policy statements and commentary in any submission of

guideline amendments to Congress and put them into effect on the same November 1 date as

any guideline amendments issued in the same year." U.S. Sentencing Comm'n, Rules of

Practice and Proc. 4.1.

When revising the guidelines, the Commission is directed to consider comments and

data coming to its attention and also to consult with authorities and representatives of various

entities of the criminal justice system. The United States Probation System, the Bureau of

Prisons, the Judicial Conference of the United States, the Criminal Division of the United

States Department of Justice, and a representative of the Federal Public Defenders are to

submit observations, comments, or questions pertinent to the work of the Commission and

shall submit at least annually a report commenting on the guidelines and suggesting changes

that appear warranted. 28 U.S.C. § 994(o).

Finally, as is particularly relevant to this case, Congress directed that the Commission,

in promulgating general policy statements regarding the sentence modification provisions in

18 U.S.C. § 3582(c)(1)(A), "shall describe what should be considered extraordinary and

compelling reasons for sentence reduction, including the criteria to be applied and a list of

specific examples." The only qualification to this directive is that "[r]ehabilitation of the

9

defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 944(t). Against this backdrop, the Commission promulgated USSG §§ 1B1.13(b)(6) and (c), set forth above.

In reviewing the revised policy statement and considering the requirements of the statute, it appears that the Commission fulfilled the statutory prerequisites. As explained by the Chair of the Commission, the change to the policy statement (and the other changes made by the Commission) were made after input from individuals and communities across the country, including Congress, the chambers of federal courts, prosecutors, public defenders, probation officers, and members of the public. Sent. Comm. Public Meeting Tr. from April 5, 2023, at 5–7.[3] The policy about which the Commission received the most commentary was the one under scrutiny here—the program statement addressing compassionate release. See discussion, id. at 9–17.

The motion to adopt the amended policy statement passed by a vote of four to three, id. at 81–82, along with the other proposed amendments to the guidelines and policy statements. The amendments were adopted by the Commission on April 5, 2023, and the Commission submitted them to Congress on April 27, 2023, along with a statement of reasons for the proposed amendments. Even though the Commission is not required to submit changes to policy statements to Congress, it submitted all the proposed amendments, including the policy statement regarding "unusually long sentences," as a package. Congress did not act to modify or disapprove the amendments and they became effective on November

---

[3] https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf

1, 2023. See 88 Fed. Reg. 28,254-01, 28,255, 28,258–28,259, 2023 WL 3199918 (F.R. May 3, 2023).

### (1) Reasonableness of Policy Statement

The government appears to concede that the Commission exercised its delegated authority in promulgating the revised policy statement but argues that the Commission's interpretation of the statute should be set aside because it is unreasonable and conflicts with § 3582(c)(1)(A)'s plain text, context, and purpose. Resp., ECF No. 316 at 13. The government cites United States v. LaBonte, 520 U.S. 751, 753 (1997), where the Court invalidated a guidelines amendment, finding that the Commission's interpretation was inconsistent with the plain language of 28 U.S.C. § 994(h). Although the Commission's discretion is broad, "it must bow to the specific directives of Congress." Id. at 757. In determining whether a guideline accurately reflects Congress' intent, the court looks at the statutory language, and if the guideline is at odds with the plain language of the statute, "it must give way." Id.

In LaBonte, Congress directed the Commission to assure that the guidelines specified a prison sentence "at or near the maximum term authorized for categories of" adult offenders who commit their third felony drug offense or violent crime. Id. at 752 (citing 28 U.S.C. § 994(h)). At issue was whether, "by 'maximum term authorized,' Congress meant (1) the maximum term available for the offense of conviction including any applicable statutory sentencing enhancements, as the United States argue[d], or (2) the maximum term available without such enhancements, as the Commission ha[d] determined." Id. at 752–53. The Court found that, applying the maxim that "Congress said what it meant" and giving the words their ordinary meaning, the word "maximum" most naturally connoted the "greatest quantity or

value attainable in a given case." Id. at 757 (quoting Moskal v. United States, 498 U.S. 103, 108 (1990); Webster's New International Dictionary 1396 (2d ed. 1958); Black's Law Dictionary 979 (6th ed. 1990)). The Court concluded that the phrase "maximum term authorized" should be construed as requiring the "highest" or "greatest" sentence allowed by statute. Id. at 758. "In sum, we hold that the phrase 'at or near the maximum term authorized' is unambiguous and requires a court to sentence a career offender 'at or near' the 'maximum' prison term available once all relevant statutory sentencing enhancements are taken into account." Id. at 762.

Applying the same maxim and giving the words their ordinary meaning, 28 U.S.C. § 994(t) charges the Commission with defining what constitutes "extraordinary and compelling reasons for sentence reductions." Congress stated that "the Commission ... shall describe what should be considered extraordinary and compelling reasons for sentence reductions, including the criteria to be applied and a list of specific examples." Id. This language is broad and does not on its face preclude an "unusually long sentence" along with the other criteria found in USSG §§ 1B1.13(b)(6) and (c) from being considered "an extraordinary and compelling" reason for a sentence reduction. To the contrary, the language is unambiguous and bestows upon the Commission the duty to "describe what should be considered extraordinary and compelling reasons for sentence reductions" and provide "a list of specific examples." The Commission has done so in §§ 1B1.13(b)(6) and (c).

The government also argues that to justify a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), a proffered reason must be "extraordinary and compelling," and as a matter of plain language, an intervening change in case law is neither. Resp., ECF No. 316 at 13.

However, prior to the promulgation of § 1B1.13(b)(6), several courts found that intervening changes in law can be "extraordinary and compelling reasons" for a sentence reduction, and that has been the law in the Fourth Circuit since 2020. See McCoy, 981 F.3d at 286 ("We think courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair."). Of course, McCoy has been superseded by § 1B1.13(b)(6), but the argument that a nonretroactive change in law cannot be an extraordinary and compelling reason for a sentence reduction is undermined by McCoy and other courts that have reached similar conclusions. See United States v. Ruvalcaba, 26 F.4th 14, 28 (1st Cir. 2022) ("We hold that the district court's categorical exclusion of non-retroactive changes in sentencing law from the 'extraordinary and compelling' calculus is neither consistent with the relevant statutory text nor compelled by the arguments embraced by the district court."); United States v. Chen, 48 F.4th 1092, 1097–98 (9th Cir. 2022) (finding for purposes of § 3582(c)(1)(A), "[t]here is no textual basis for precluding district courts from considering non-retroactive changes in sentencing law when determining what is extraordinary and compelling."); United States v. McGee, 992 F.3d 1035, 1047–48 (10th Cir. 2021) (finding that nothing prohibits district courts from finding the existence of "extraordinary and compelling" circumstances based at least in part on the fact that the First Step Act lowered the mandatory minimum sentence to be imposed under 21 U.S.C. § 841(b)(1)(A)).

Moreover, after promulgation of the new policy statement, the Fourth Circuit reiterated its holding that a change in sentencing law can constitute an extraordinary and compelling reason for compassionate release in United States v. Davis, 99 F.4th 647 (4th Cir. 2024). The

court first quoted <u>McCoy</u>, 981 F.3d at 287 (cleaned up), for its statement that "the very purpose of § 3582(c)(1)(A) is to provide a safety valve that allows for sentence reductions where there is not a specific statute that already affords relief but extraordinary and compelling reasons nevertheless justify a reduction." <u>Davis</u>, 99 F.4th at 657. The court next quoted <u>Concepcion v. United States</u>, 597 U.S. 481, 487 (2022), which held that "[b]ecause district courts are always obligated to consider the nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them." <u>Davis</u>, 99 F.4th at 657. The court concluded that <u>Concepcion</u> and the Commission's policy statement in § 1B1.13 (b)(6) "serve to confirm and amplify" the court's earlier ruling in <u>McCoy</u> that "[n]on-retroactive changes in law remain relevant when a court has to decide when and how to modify a sentence," and a court abuses its discretion when it fails to do so. <u>Id.</u> at 658.

Although the Fourth Circuit did not parse the language of § 1B1.13 (b)(6) in connection with 18 U.S.C. § 3582(c)(1)(A), the court found the policy statement to be consistent with the Supreme Court precedent set in <u>Concepcion</u> and its own precedent in <u>McCoy</u>. Given the court's unequivocal holding that non-retroactive changes in the law may warrant compassionate release, this court has no basis for finding that USSG §1B1.13 (b)(6) is at odds with 18 U.S.C. § 3582(c)(1)(A)'s plain text, context, and purpose.

The government cites to cases from other circuits that have reached the opposite conclusion. <u>See, e.g., United States v. Jenkins</u>, 50 F.4th 1185, 1198 (D.C. Cir. 2022) (finding there is nothing "remotely extraordinary" about statutes applying only prospectively and the change to § 924(c) to eliminate the stacking provision could not be considered an extraordinary

14

and compelling reason for a sentence reduction); United States v. McCall, 56 F.4th 1048, 1055 (6th Cir. 2022) ("Consistent with the text of the compassionate-release provision, along with the principles, structure, and history of federal sentencing law, we hold that nonretroactive changes in sentencing law cannot be 'extraordinary and compelling reasons' that warrant relief."); United States v. Thacker, 4 F.4th 569, 576 (7th Cir. 2022) (finding that change to § 924(c) cannot constitute an extraordinary and compelling reason for a sentence reduction); United States v. Crandall, 25 F.4th 582, 586 (8th Cir. 2022) (concluding that "a non-retroactive change in law, whether offered alone or in combination with other factors, cannot contribute to a finding of 'extraordinary and compelling reasons' for a reduction in sentence under § 3582(c)(1)(A)") and United States v. Andrews, 12 F.4th 255, 261 (3rd Cir. 2021) ("The nonretroactive changes to the § 924(c) mandatory minimums . . . cannot be a basis for compassionate release."); United States v. McMaryion, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam).

But the fact that prior to promulgation of USSG §§ 1B1.13 (b)(6) and (c) courts disagreed on whether a non-retroactive change in law could be an extraordinary and compelling reason for a sentence reduction does not mean that the Commission exceeded its authority when it adopted the policy statement. Congress has charged the Commission with periodically reviewing and revising the guidelines. Braxton v. United States, 500 U.S. 344, 348 (1991) (citing 28 U.S.C. § 994(o)). "The Guidelines are of course implemented by the courts, so in charging the Commission "periodically [to] review and revise" the Guidelines, Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial

15

decisions might suggest." Id. "In other words, Congress anticipated that the Commission would use the amendment process to resolve disagreements among courts of appeals." United States v. Goines, 357 F.3d 469, 475, 2004 WL 144119 (4th Cir. 2004) (citing Douglas A. Berman, The Sentencing Commission as Guidelines Supreme Court: Responding to Circuit Conflicts, 7 Fed. Sentencing Rep. 142, 142 (1994)). As that is what the Commission did when it adopted § 1B1.13(b)(6) and (c), the court cannot find that it exceeded its authority simply because courts were not unanimous in their interpretation of 18 U.S.C. § 3582(c)(1)(A) prior to adoption of the policy statement.

The government further asserts that the Commission's explanation for the amendment cites a single sentence from the relevant Senate Report that allows courts to reduce "unusually long sentences." Resp., ECF No. 316 at 21 (citing 88 Fed. Reg. at 28,258). In the passage, the Senate Judiciary Committee stated that "'the unusual case in which an eventual reduction in the length of a term of imprisonment' would be 'justified by changed circumstances' might include 'cases of severe illness' or 'cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence.'" Id. (citing Senate Report at 55). The government argues that the Commission took that statement and elevated it above the Sentencing Reform Act's plain text and overarching purpose. Id.

In addition, the government contends that nothing about the First Step Act's procedural amendment to Section 3582(c)(1)(A) or Congress's expectation that the amendment would lead to greater use of the provision suggests that "Congress intended to change th[e] substantive status quo with a process-oriented amendment." Id., (citing McCall, 56 F.4th at 1060). Finally, the government argues that the Commission's interpretation of §

3582(c)(1)(A) is in tension with the principle of separation of powers because it purports to empower courts to ignore Congress's retroactivity decisions on a case-by-case basis. Resp., ECF No. 316 at 23–25.

With these arguments, the government is asking this court to do what Congress did not, which is to reject the amendment to the policy statement based on a determination that the changes do not comport with the broad mandate given to it by Congress. In analyzing another policy statement in the guidelines, USSG § 1B1.10, which addresses retroactivity of guidelines amendments, the Third Circuit Court of Appeals noted the following:

> Although the Commission's policy statements are subject to neither the 180–day waiting period nor the APA's notice-and-comment requirements, its revision of § 1B1.10 did not violate the separation-of-powers doctrine. The purpose of those measures—to make the Commission accountable—was fulfilled. "Although policy statements are not subject to the 180–day waiting period applicable when the Commission passes a Guidelines Amendment, Congress can direct the Commission to change its retroactivity determination or pass a law overruling the Commission's determination 'at any time.'" [United States v. Horn, 679 F.3d 402, 405–06 (6th Cir. 2012) (quoting Mistretta v. United States, 488 U.S. 361, 394 (1989)) (internal citation omitted)]; see also United States v. Fox, 631 F.3d 1128, 1131 (9th Cir. 2011) ("Congress, of course, can override both Guidelines and Policy Statements by statute."). The Commission, then, remains fully accountable to Congress when it issues binding policy statements like § 1B1.10. Moreover, the Commission did solicit public views about § 1B1.10(b)'s limitation on sentence reductions and made its decision to make the limitation more stringent at a public hearing. See 76 Fed.Reg. 24960 (May 3, 2011); U.S. Sentencing Comm'n, Public Meeting Minutes (June 30, 2011). "The public nature of the proceedings provided an effective check and allayed the concerns voiced by the Court in Mistretta." Horn, 679 F.3d at 406.
>
> No legislative power imbalance of constitutional dimensions resulted from the Commission's decision to set a limit on sentence reductions pursuant to § 3582(c)(2). Congress validly

17

> delegated to the Commission authority to make that decision, drafted the statute that made it binding on courts, and retained the power to legislate over it. The legislative authority Defendants ascribe to the Commission was not unfettered or otherwise improper.

United States v. Berberena, 694 F.3d 514, 524–25 (3d Cir. 2012). The Eighth Circuit reached the same conclusion in United States v. Anderson, 686 F.3d 585, 589–91 (8th Cir. 2012), as did the Eleventh Circuit in United States v. Colon, 707 F.3d 1255, 1261 (11th Cir. 2013).

The same reasoning applies with regard to §§ 1B1.13(b)(6) and (c). Congress gave the Commission the authority to promulgate the policy statement at 28 U.S.C. § 994(t) and the Commission did so. Congress presumably reviewed §§ 1B1.13(b)(6) and (c) during the 180-day period the revised guidelines were under review and took no action. If Congress believed that the Commission's policy statement ran afoul of the doctrine of separation of powers, it could have taken action and indeed, can still take action, using its authority to override the policy statement. Fox, 631 F.3d at 1131. This court can discern no basis for taking action that Congress has the authority to take with regard to policy statement but thus far, has not.

Finally, the court notes that it found only one other case in the Fourth Circuit that addressed this issue, albeit in a footnote. See United States v. Dire, No. 2:10cr56, 2024 WL 4259871, at *3 n.3 (E.D. Va. Sept. 20, 2024) (rejecting argument by government that the Commission exceeded its authority when it authorized district courts to consider non-retroactive statutory amendments as a basis for compassionate release). Other courts which have considered whether the Commission exceeded its authority are divided. Compare, e.g., United States v. Jean, 108 F.4th 275, 290 (5th Cir. 2024) (taking note of the deference given to the Commission by both Congress and the Supreme Court and finding that the

Commission's resolution of the circuit split supports the conclusion that modification of a legally imposed sentence may be warranted by non-retroactive changes in the law); and <u>United States v. Ware</u>, No. 1:97-CR-00009-SCJ, 2024 WL 1007427, at *7 (N.D. Ga. Mar. 6, 2024) (assessing same arguments the government makes here and concluding that "that the Sentencing Commission lawfully exercised its authority in defining extraordinary and compelling reasons for compassionate release in Section 1B1.13(b)(6)'s amendment for unusually long sentences.") <u>with</u> <u>United States v. O'Neill</u>, No. 97-CR-98-1-JPS-JPS, 2024 WL 2369102, at *22 (E.D. Wis. May 23, 2024) ("[T]he Court finds that § 1B1.13(b)(6) is manifestly contrary to the statutory scheme set forth in § 994(t) and § 3582(c)(1)(A), and that the Commission exceeded its statutory authority by adding the subsection.") and <u>United States v. Carter</u>, No. 07-374-1, 2024 WL 136777, at *6 (E.D. Pa. Jan. 12, 2024) (finding that Third Circuit's holding that an unusually and disproportionately long sentence is not an extraordinary and compelling sentence warranting a sentence reduction could not be overridden by the Commission because it did not have authority to amend the statute the court construed in a prior case).

Notwithstanding the division among the courts, this court is bound to follow Fourth Circuit precedent as set out in <u>Davis</u>. Although the argument regarding whether the Commission exceeded its authority was not before the <u>Davis</u> court, the Fourth Circuit implicitly found that §§ 1B1.13(b)(6) and (c) resulted from an appropriate exercise of the Commission's authority when it applied the policy statement to find that a gross disparity between an original sentence and the sentence the defendant likely would receive today can be an extraordinary and compelling reason warranting compassionate release.

In sum, the court finds that §§1B1.13(b)(6) and (c) of the guidelines are consistent with 18 U.S.C. § 3582(c)(1)(A) and 28 U.S.C. § 994(t). The Commission did not exceed its authority when it amended the policy statement, and the court will apply the Commission's interpretation of what constitutes an extraordinary and compelling circumstance warranting a sentence reduction to Tronco-Ramirez's case.

### B. Change to Mandatory Minimum Sentence

Tronco-Ramirez argues that the disparity between the stacked § 924(c) sentences he faced in 2011 and the sentence he likely would receive today receive for the same offense creates an "extraordinary and compelling reason" for his release. Tronco-Ramirez's sentence is comprised of 20 years on each drug conviction, to be served concurrently, and 5 years on the §924(c) conviction. He was indicted on a second § 924(c) offense (Count Four), and had he been convicted of the offense, he would have faced an additional consecutive mandatory 25-year sentence. Count Four was predicated on the statute in effect at the time, which provided that "in the case of a second or subsequent conviction under this subsection, the person shall be sentenced to a term of imprisonment of not less than 25 years...." 18 U.S.C. § 924(c)(1)(C) (2006). Thus, in 2011, Tronco-Ramirez faced a statutory minimum sentence of 10 years on each drug conviction, a mandatory consecutive 5 years on the first firearm conviction and 25 years on the second firearm conviction, for a mandatory minimum sentence of 40 years. PSR, ECF No. 223 ¶¶ 50, 52. Under the current statutory scheme, because Tronco-Ramirez had not yet been convicted of the first violation prior to committing the second violation, the mandatory minimum sentence for each § 924(c) charge would be 5 years. See 18 U.S.C. § 924(c)(1)(A)(i) (2022). The change in the sentence reflects "what Congress has now

deemed an adequate punishment for comparable § 924(c) conduct." McCoy, 981 F.3d at 285 (quoting United States v. Redd, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020)).

Tronco-Ramirez pled guilty pursuant to a Rule 11(c)(1)(C) agreement, in which the government agreed to dismiss the second firearm charge, with its 25-year sentence, in exchange for his agreeing to a sentence of 300 months. Today, without the threat of a 40-year sentence hanging over his head and looking at a likely statutory sentence of 20 years, Tronco-Ramirez would have no incentive to agree to the 300-month, or 25-year sentence, that was the result of the plea agreement. If he and the government agreed to dismissal of the second firearm charge, his sentence would likely be 15 years.[4] Under that scenario, Tronco-Ramirez's guidelines sentence today would be 87 to 108 months, increased to 120 months on the drug convictions, and 60 months on the firearm conviction, for a total of 180 months.

The government argues that the difference of 105 months between the sentence Tronco-Ramirez received in 2011 (300 months reduced to 285 months) and the sentence he likely would receive today (180 months) is not as "radically different" as it seems when it is compared to other cases involving "stacked" 924(c) sentences. However, this court and others have found that a sentencing disparity need not be as long as that contemplated in McCoy to be an extraordinary and compelling reason for compassionate release.[5] For example, in United States v. Shaw, No. 5:15-cr-00025, 2021 WL 3007266 (W.D. Va. July 15, 2021), this court

---

[4] The government agrees that even though the court could impose a sentence longer than the mandatory minimum of 180 months, based upon the adjusted guidelines and the § 3553(a) factors, a sentence of 180 months is what the government would recommend and what the court likely would impose. Opp'n to Mot. for Compassionate Release, ECF No. 316 at 26, n. 8.

[5] In McCoy, one petitioner originally was sentenced to just over 35 years and his sentence was reduced to time served, or approximately 17 years. The three other petitioners were sentenced to 45 years and their sentences were reduced to time served, or approximately 25 years. McCoy, 981 F.3d at 277-79.

found that a sentencing disparity of 22 months was an extraordinary and compelling reason to grant a sentence reduction. See also United States v. Miller, No. 2:08-cr-01155-DCN-8, 2023 WL 7065545, at *4 (D.S.C. Oct. 26, 2023) (granting compassionate release when if sentenced today, defendant's sentence would likely be 30 months shorter than original sentence); United States v. Williams, No. 14-cr-428, 2021 WL 5827327 (E.D. Va. Dec. 8, 2021) (finding sentence more than three years longer than it would have been were defendant convicted today to be an extraordinary and compelling reason for compassionate release); and United States v. Brown, No. 3:15-cr-00017, 3:06-cr-00021, 2021 WL 2389881, at *10 (W.D. Va. June 11, 2021) (finding 74-month difference in sentence defendant would have received if sentenced today to be a "gross disparity" and thus an extraordinary and compelling reason to warrant a sentence reduction).

The court finds that the 105-month difference between the sentence Tronco-Ramirez received in 2011 and the sentence he likely would receive today for the same conduct to be an "extraordinary and compelling reason" for relief under USSG § 1B1.13(b)(6) and (c).

### C. 18 U.S.C. § 3553(a) Factors

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in § 3742(g), is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Looking first at the nature and circumstances of the offense, Tronco-Ramirez participated for approximately one year in a conspiracy that trafficked methamphetamine in and around Harrisonburg, Virginia. When a search warrant was executed at his residence, law enforcement officers found 340.6 grams of methamphetamine, $3,006 in United States currency, two revolvers with ammunition, owe sheets, digital scales, and money wire receipts. Tronco-Ramirez told officers that the drugs belonged to him and that he previously had traded methamphetamine for the handguns. PSR, ECF No. 223 ¶¶ 11, 17. Tronco-Ramirez was held accountable for at least 1.5 kilograms but less than 5 kilograms of methamphetamine. Id. ¶ 18. The court is familiar with the destruction wrought in communities by drug distribution, and Tronco-Ramirez's participation in this conspiracy weighs against a sentence reduction.

Turning to the history and characteristics of the defendant, Tronco-Ramirez was one of eight children born to a family in Vera Cruz, Mexico. He obtained an eighth-grade education and entered the United States illegally around 1996 when he was approximately 27 years old. He worked primarily in poultry production facilities and asserted that he was terminated because of his immigration status in 2009, around the time he began selling methamphetamine. PSR, ECF No. 223, ¶¶ 40, 45–47. Tronco-Ramirez reported that he started drinking at age 12 and was a heavy drinker by age 17. He first used methamphetamine at age 41, in around 2010, and quickly became a daily user. Id. ¶ 44. His one criminal history point came from a DUI arrest in 2001, for which he spent 60 days in custody. PSR, ECF No. 223 ¶ 37.

The court asked the parties to submit evidence of Tronco-Ramirez's institutional record. ECF No. 318. Tronco-Ramirez submitted a disciplinary record that indicates that no disciplinary charges are pending, but the record did not indicate whether Tronco-Ramirez was

disciplined in the past. ECF No. 319. The government notified the court that it had nothing further to submit. ECF No. 320. The documents submitted by Tronco-Ramirez also indicate that prior to being transferred to the facility in Mexico, he took several classes and at times worked as an orderly and did HVAC work. ECF No. 319 at 3–4.

Looking at Tronco-Ramirez's history and characteristics as a whole, although he participated in the drug-dealing conspiracy and two guns were found in his residence at the time he was arrested, he has no history of violence. His institutional record is notable for its lack of disciplinary proceedings. These factors taken together weight slightly in favor of Tronco-Ramirez's request for a sentence reduction.

Looking next at the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, the court finds that a sentence of 180 months is sufficient to meet these goals. A sentence of 180 months is substantial, and the court does not believe that additional time is necessary to achieve the punitive and deterrent goals of punishment. Nor does the court find that additional time is necessary to provide Tronco-Ramirez with educational or vocational training, medical care, or other correctional treatment.

Looking at the kinds of sentences available and the applicable guidelines range, as discussed above, Tronco-Ramirez would face a statutory mandatory minimum sentence of 180 months for his offense if he were sentenced today. His base offense level for the drug

offense would be 32 (reduced from 34 after changes to USSG § 2D1.1), decreased by 3 levels for acceptance of responsibility, for a total offense level of 29. Together with his criminal history category of I, his guidelines range would be 87 to 108 months, increased to 120 months because of the statutory mandatory minimum sentence on the drug offense. The mandatory minimum sentence for the firearm offense would be 60 months. Both the reduced mandatory minimum sentence and the reduction in the guidelines sentence weigh in favor of reducing Tronco-Ramirez's sentence. Regarding consideration of pertinent policy statements, as set forth above, the court finds that reducing Tronco-Ramirez's sentence to 180 months is consistent with USSG §§ 1B1.13(b)(6) and (c).

Finally, considering the need to avoid unwarranted sentencing disparities, the court notes that Tronco-Ramirez received the highest sentence by far in the conspiracy, with the next highest sentence being 90 months. His 300-month sentence was driven by the mandatory 25-year sentence in effect for the firearm charge in Count 4. As discussed above, Congress has now lowered that mandatory minimum sentence to 5 years. If Tronco-Ramirez's sentence is reduced to 180 months, it will still be twice as high as the second highest sentence assessed in the conspiracy. Thus, reducing Tronco-Ramirez's sentence to 180 months does not create an unwarranted sentencing disparity between codefendants as his sentence is still the most severe sentence assessed in the conspiracy. None of the other factors weigh in favor or against a sentence reduction.

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Tronco-Ramirez's case. Given the circumstances of this case, including Tronco-Ramirez's history and characteristics, the changes

in 18 U.S.C. § 841(b)(1)(A) brought about by the First Step Act, and the relevant guidelines, the court concludes that a sentence of 180 months is appropriate. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Tronco-Ramirez's conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public.

### III. Conclusion

For the above-stated reasons, the court will **GRANT** Tronco-Ramirez's supplemental motion for compassionate release, ECF No. 311, and reduce his sentence to 180 months, but not less than time served, to be followed by a 5-year term of supervised release. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered: 11/06/2024

Michael F. Urbanski
Senior United States District Judge